Anderson, J.,
delivered the opinion of the court.
John Gouldin, by his last will, bearing date 1st day of February 1863, and probated March 9th following, after the payment of his debts, desired that all his lands, except the land he bought of the Buckners, called the Summer-house tract, and the land he bought of Catharine Merryman’s estate, be divided into three lots, which are described, and gives to his son James F. Gouldin the first choice of the three lots, and to his son Thomas W. Gouldin the second choice.
He bequeaths to his granddaughter Josephine A. Broadus, for life, with remainder to her issue, if any, and in default of issue to his children and their legal representatives, the sum of three thousand dollars in bank stock and two servants.
To his son Thomas W. Gouldin a specific legacy, including a number of servants.
To his son James F. Gouldin a similar specific legacy.
To the estate of his son Silas B. Gouldin, the interest of Silas B. Gouldin, Jr., which he bought of C. C. Jett, trustee.
To his daughters, Martha J. .Broadus, Lavinia C. White and Bettie J. Conway, he makes severally specific legacies of slaves.
To his daughter Lavinia C. White he gives the money he lent her husband Wm. S. White, and his watch; to his daughter Bettie Conway one thousand dollars, to be added to what she has already received; *502 and to his daughter Martha J. Broadus he lends the farm on which she resides, for her use and benefit during her life, and at her death to return to his heirs- or their legal representatives.
All the balance of his estate, not already disposed of, he directs shall be equally divided into four parts. After , the sale of the land, one part to go to the heirs of his son Silas B. Gkmldin, one part to his daughter Martha J. Broadus, one to Lavinia C. White, and one part to Bettie J. Conway.
That portion of his estate included in the foregoing residuary clause, allotted to the heirs of his son Silas, he leaves in the hands of his executors, to be sold or not as they may think best for the children, and equally divided among them. And that portion allotted to his daughter Martha J; Broadus, as well as the farm on which she resides, he leaves also in the hands of his executors, in trust, for her use and benefit during her life, and at her death to return to his children, &c. He directs his executors to sell the portion of his estate which is included in the residuary clause, as soon after the payment of his debts as they may think best for the benefit of the legatees interested. And he appoints his sons Thomas W. G-ouldin and James F. Gouldin his executors, and requires of them no security.
William S. White removed, with his wife Lavinia and their seven children, to the state of Georgia, in 1863, where they remained until 1871, when they removed to the state of Tennessee, where they now reside. This is a suit by Mrs. Lavinia C. White, by bill in chancery, for a settlement on her and her children of the foregoing legacy. The bill alleges that her husband, William S. White, has little or no means, and can with great difficulty support her and her chil *503 dren, and that not comfortably. The evidence shows very clearly that he is insolvent. The issue is between her and creditors of her husband, who seek to subject her legacy to the payment of his debts. When these debts were contracted the property involved in this controversy was neither hers nor her husband’s. It was the property of John Gouldin, who subsequently bequeathed it to his daughter.
The wife had rights in this legacy independently of, and adversely to her husband. The theory of this branch of equity jurisprudence, is very clearly stated by Mr. Story (2 Stor. Eq. § 1405). “By marriage (he says) the husband clearly acquires an absolute property in all the personal estate of his wife capable of immediate and tangible possession. Butif it is such as cannot be reduced into possession except by an action at law, or by a suit in equity, he has only a qualified interest therein, such as will enable him to make it an absolute interest by reducing it into possession. If it is a chose in action, properly so-called, that is, a fight which may be asserted by an action at law, he will be entitled to it if he has actually reduced it into possession in his lifetime. (Mr. Story says a judgment is not sufficient; upon which we give no opinion.) But if it is a right which must be asserted in a court of equity, as where it is vested in trustees who have the legal property, he has still less interest. He cannot reach it without application to a court of equity, in which he cannot sue without joining her with him; although perhaps a court of law might permit him to do so, or at least to use her name without her consent. If the aid of a court of equity is asked by him in such case it will make him provide for her, unless she consents to give such equitable property to him.” Baldwin, J., in Yerby & wife v. Lynch & al. 8 Gratt. 439, 476, said, “It *504 will be found that whenever the husband has not the unlimited disposition by assignment of choses in action of ■ the wife, they are such as are not assignable at common law, as debts due her on bonds or otherwise, money in funds, legacies, trust funds, and other property recovei-able by action or suit.” The propei’ty in this case is a legacy, which is only recoverable by suit in equity; and in a suit for such purpose by the husband he must join the wife as plaintiff And if the husband had brought suit in this case to procure said legacy, or any portion of his wife’s fortune, a settlement would have been decreed to the wife upon her request. In such ease it is of no consequence, whether the fortune accrues before or during a marriage, the equity of the wife will attach to it. (Stor. Eq. § 1408.) And the legacy having been made to her during the marriage, and after the debts sought to be enforced against it were contracted, she has a higher equity against the claims of her husband’s creditors, because the debts could not have been contracted on the faith of the property now claimed by her. All who claim under the husband must take his interest subject to the same equity.
The wife was then, in this case, invested with a property by the will of her father, of which she could not be divested by her husband or bis creditors by any legal proceeding except by suit in equity, to which she was a party. The wife may not only assert her right to a settlement in a suit brought by the husband or his assignee to extinguish her right, by way of defence; but she may bring a separate and independent suit in her own name by her trustee, against the husband and his assignee, to prevent her property being subjected to the marital rightR of her husband, and to have it, or a part of it, settled upon her and her children. It was *505 at one time supposed that the wife could only assert her equity in a suit by the husband or his assignee to acquire her property absolutely, only upon the principle that he who asks equity must do equity. But it seems to be settled now, that the wife’s equity constitutes a valuable consideration to support a post-nuptial settlement by her husband; and it is now firmly established that she may recover her property in a suit brought by her or her trustee for the purpose of asserting her claim to a settlement, and that a court of equity will decree to her the whole of it if only a reasonable settlement. Poindexter & wife v. Jeffries & als., 15 Gratt. 363; Stor. Eq., § 1377 a; Davis’ widow v. Davis’ creditors, 25 Gratt. 587.
But it is contended by the appellees, that the right of the husband to the wife’s legacy in this case has become absolute, and the wife’s equity extinguished by the submission and award of arbitrator's, and the entering up said award ex parte as the decree of the court.
It does not appear that the appellant was a party to that submission. The deed of submission is signed and sealed by William S. White, and under his signature is written, “For self and Laviuia C. White.” There is nothing to show that her signature is there either by her act or by her authority, „or with her assent. Indeed it does not purport to have been signed by her. It only purports to have been signed and sealed by William S. White for himself and Lavinia C. White. She puts in issue the fact of execution by her bill, by the averment that she has not personally united in or been bound by any of those proceedings; and there is nothing in the record to show that she participated in them in any manner. At the time of these proceedings, from their inception to their ending, she was not present, but resided in a distant state, *506 and in all probability had no knowledge of what was going on. Her husband disclaims any authority from her to assent to the submission, or to confirm or sanction the award, and there is no proof of her knowledge or assent.
Is it competent for the husband, in the absence of his wife, and without her consent or knowledge, to enter into an agreement with the executors of her father and the legatees, to submit to arbitration her legacy, which he could only recover by suit, by suing jointly with her in equity, and in which suit he could not recover without making a settlement on her, and to agree that the award should be made the decree of court under a rule, thereby depriving the wife of her right to a settlement? It would be a fraud upon the rights of the wife. If she were notified of the proceeding, she might invoke the interposition of a court of equity to restrain the arbitrators from proceeding to-award the payment of her legacy to her husband, or her husband from receiving it, without making a reasonable settlement on her and her children. It does not appear that she was ever served with notice of the award or of the rule of court. The whole proceeding was ex parte as to her, and should not be allowed to deprive her of her right to a settlement. The award itself is but a chose in action, and doubtless was not intended by the arbitrators to settle aiid adjust- any questions involving the marital rights of the husband or wife; nor was the litigation of any such matters contemplated or designed by the parties in their deed of submission; nor was there in fact any such question canvassed' or passed upon by the arbitrators in making up their award. The only purpose was to ascertain the extent of the executors’ liabilities, and the amount due to each legatee; and the direction that *507 the executors should pay to William S. White the legacy due to his wife was given evidently without reference to any question as to the right of the wife to a settlement, and without intending to pass upon such right. The award has not been executed; the ex parte decree has not been performed; the subject matter remains in statu quo. What is there to preclude the wife from now filing her bill, and asking that the ex parte decree may be reformed, and that the amount awarded her should not be paid to her husband or his creditors, but that it be settled on her and her children; as she has done in this case?
. But does the award and the ex parte decree of the court, if valid, vest the plaintiff’s legacy absolutely in her husband, and debar her of her right to proceed in equity for a settlement?
“hTo act or intention of the husband which stops short of an actual reduction-into possession, or of an entire extinguishment of the original right of action in the wife, in some of the modes indicated, can operate so as to destroy her right.” Allen, J., in Yerby & wife v. Lynch & al., 3 Gratt. 439, 495. In this case there has been no actual reduction of the wife’s legacy by the husband into possession. The residuum consisted of lands, which the executors were required to sell as soon after payment of testator’s debts as they may think best for the legatees interested. The bill alleges that said lands are still held by the executors unsold, and the legacies which are to be raised by the sale thereof have not been paid; tfiat the legacy to the plaintiff has not been paid. to her husband or to his creditor’s, and that she is not precluded by reason of said award and ex parte decree, to which she was not a party, from obtaining a decree against the executors in this suit. She is willing to accept the amount *508 in satisfaction of her legacy as ascertained by the said arbitrators; but asks that the same may be settled upon her for the support of herself and childi’en, free from the control or appropriation of her husband, or any of his creditors. Admitting said award and ex parte decree to be binding as between her husband and the other parties to the same, it cannot be binding as between her and any of the parties thereto, she not having been a party to either. And the decree that the executors should execute their bonds to William S. White for the amount of his wife’s legacy so ascertained, and execute a deed of trust upon certain lands as security for the same, upon receiving refunding bonds with security satisfactory to them, from the said William S. White, and deeds of release from the said William S. White and Lavinia 0., his wife, of all the interests and claims of said parties in and to the estate of John Gouldin, deceased; and moreover, releasing said Thomas W. and James F. Gouldin of all liability and obligation to them, over and beyond their obligation for the payment of moneys, as imposed and directed by said award, having never been perfonned; and the payment to W. S. White by the executors being conditioned upon the performance of said several acts by the said Wm. S. White, which he has not chosen to perform, and upon the execution of a joint deed of release by the said Wm. S. White and Lavinia O. White, which it was at least optional with her to perform or not, it seems to the court that said conditional award and decree not having been performed by the husband, and not obligatory upon the executors until performed by William S. White and Lavinia C., his wife, and being incapable of a coerced performance by the wife, they cannot be regarded as even constructively a reduction by the husband of the wife’s legacy into his *509 possession. Hor can said award and decree, under the circumstances and in connection with the facts, be regarded as a surrender or waiver by the wife, or ex-tinguishment of her equity.
Courts of equity will interpose to secure to the wife her equity to a settlement—first, when the husband seeks aid or relief in a court of equity in regard to her property; secondly, when he makes an assignment of her equitable interest; and, thirdly, where she seeks, as plaintiff, relief in equity against her husband, or his assignees, in regard to her equitable interests. It is true, she may waive a settlement, and agree that the equitable fund shall be wholly and absolutely paid over to her husband. But it must very satisfactorily appear that such was her wish. In a pending proceeding her consent must he given before a settlement under the decree is completed, and her consent must be given in open court or under a commission. Such is the respect which the coui’ts of equity have for the wife’s equity. And in some cases a court of equity will not allow the wife to dispense with a settlement out of her property, as where she had been a ward of the court of chancery and married without its authority. 2 Story Eq. §§ 1404 and 1418.
As to the amount which should be settled upon the wife—whether a part or the whole of her legacy, and, if only a part, what proportion—depends upon what would be a reasonable settlement. The court is not prepared to say that the whole of the wife’s legacy in this case ought not to be settled on her and her children. If it is not more than would afford them a reasonable support, being property given to her by her father, and upon the faith of which the debts in question could not have been contracted, and evidently not intended to go to her husband, for even the debt due *510 the testator by the husband he gives to her, it would not be an unreasonable settlement. But there ought to be an account, to ascertain what would be a reasonable allowance. The court is therefore of opinion, to reverse the decree with costs, and to remand the cause, to be proceeded with in conformity with the principles herein declared.
Decree reversed.